UNITED STATES BANKRUPTCY COURT      Not for Publication
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re               :   Chapter 7
                :
ROSLYN FINNIE,        :   Case No. 05-16373 (AJG)
                :
        Debtor.     :
                :
------------------------------------------------------------x
                :
BINDER & BINDER, P.C.,    :
                :
        Plaintiff,    :
                :
      v.          :   Adv. Pro. No. 05-3652 (AJG)
                :
ROSLYN FINNIE and JO ANNE B.   :
BARNHART, COMMISSIONER OF   :
THE SOCIAL SECURITY ADMINISTRATION,  :
                :
        Defendants.   :
------------------------------------------------------------x

## OPINION REGARDING MOTION TO DISMISS AND
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

A P P E A R A N C E S

THE CITY BAR JUSTICE CENTER PRO BONO
      CONSUMER BANKRUPTCY PROJECT
Attorneys for Debtor
41 West 44th Street
New York, NY 10036

      Morton L. Gitter, Esq.
      John T. McManus, Esq.
        Of Counsel

ZINKER & HERZBERG, LLP
Attorneys for Plaintiff Binder & Binder, P.C.
278 East Main Street, Suite C
Smithtown, NY 11787

      Jeffrey Herzberg, Esq.
        Of Counsel

MICHAEL J. GARCIA
United States Attorney for the Southern District of New York
Attorney for Defendant Jo Anne B. Barnhart,
Commissioner of the Social Security Administration
86 Chambers Street, 5th Floor
New York, NY 10007

Peter M. Skinner, Esq.
Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge

Before the Court are a motion to dismiss and cross-motions for summary

judgment with regard to plaintiff Binder & Binder, P.C.'s ("Plaintiff" or "Binder")

adversary complaint (the "Complaint") that primarily seeks to recover $1,904.25 in

attorney's fees from Defendant Jo Anne B. Barnhart, Commissioner of the Social

Security Administration (the "SSA"). The SSA moves to dismiss Plaintiff's charging

lien[1] causes of action for lack of subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1), arguing that sovereign immunity bars such claims from being adjudicated. The

SSA moves to dismiss Binder's other causes of action against the SSA for failure to state

a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). In response, Plaintiff moves for

summary judgment against the SSA and defendant Roslyn Finnie (the "Debtor"). The

Debtor, in turn, cross-moves for summary judgment against Plaintiff.

Having reviewed the parties' pleadings and exhibits appended thereto and having

held a hearing on these matters, the Court (i) denies Plaintiff's request for declaratory

judgment in its third cause of action regarding its alleged charging lien, and finds that a

---

[1] Plaintiff uses different terminology throughout its pleadings to identify its alleged lien. At times it refers to "attorney charging lien," "charging lien" or "attorney's lien," while in other instances it uses "statutory lien" or "property right/lien." As such, the Court is unsure whether Plaintiff is referring to an attorney's charging lien in different ways or referring to more than one lien each based upon a different legal theory.

2

determination is warranted in favor of the Debtor in that Plaintiff possesses no lien on estate property, and concludes, *sua sponte*, that (ii) Plaintiff's cause of action against the Debtor regarding recoupment is dismissed for lack of subject matter jurisdiction in that there is no "case or controversy" at issue, and (iii) Plaintiff's causes of action against the SSA are dismissed for lack of subject matter jurisdiction because none of them constitute "core" or "related to" proceedings.

## I. BACKGROUND

### A. FACTS

The Debtor is a single parent who has been unable to engage in substantial gainful activity since December 1, 1997 due to severe back and leg pain.  With the aid of Binder, a New York State law firm specializing in social security disability matters, the Debtor filed a disability action seeking, among other relief, payment of retroactive social security disability benefits.  To that effect, Binder and the Debtor executed an Expedited Fee Agreement (the "Agreement") on June 8, 1999, which governed Binder's representation and compensation.  Under the Agreement, Plaintiff's legal fees would consist of the lesser of (i) $4,000, or (ii) 25% of any past-due benefits that the Debtor was awarded by the SSA pursuant to section 406(a)(4) of the Social Security Act.[2]

---

[2] Section 406(a)(4) of the Social Security Act sets forth a method for calculating attorney's fees in administrative proceedings before the Commissioner of Social Security

> [I]f the claimant is determined to be entitled to past-due benefits under this subchapter and the person representing the claimant is an attorney, the Commissioner of Social Security shall, notwithstanding section 405(i) of this title, certify for payment out of such past-due benefits (as determined before any applicable reduction under section 1320a-6(a) of this title) to such attorney an amount equal to so much of the maximum fee as does not exceed 25 percent of such past due benefits (as determined before any applicable reduction under section 1320a-6(a) of this title).

42 U.S.C. § 406(a)(4) (2007).

On October 25, 1999, the SSA approved the Agreement and rendered a decision that entitled the Debtor to disability insurance benefits dating back to May 1, 1998. Approximately one month later, on November 23, 1999, the Debtor received notice from the SSA that she was entitled to $7,869 in past-due benefits, which was subsequently reduced to $7,617 (the "Award").  On December 21, 1999, the SSA issued another notification informing the Debtor, *inter alia*, that her lawyer can charge $1,904.25 in fees based on the Agreement and that such amount would be withheld from the Award. Despite these notices, shortly thereafter the SSA issued the Award in its entirety to the Debtor, failing to pay Binder its fees from the Award.  The Debtor then expended the Award for her and her son's living expenses.

On August 4, 2004, Binder wrote the SSA to request its fees.  The SSA responded on March 23, 2005 (the "March Letter") that it had "inadvertently" released Binder's fees to the Debtor.  The SSA informed Binder that it should try to collect its fees from the Debtor and that it should notify the SSA if it experienced any difficulty in doing so.  The March Letter also stated that the SSA would withhold benefits from the Debtor to the extent of Binder's approved fees or the amount that should have been withheld, whichever is smaller.  Accordingly, Binder notified the Debtor on August 8, 2005 that the SSA had erroneously released $1,904.25 which amount should have been withheld for Binder's legal services rendered in connection with her 1999 disability claim.  The Debtor did not pay the fees and shortly after receipt of Binder's demand for payment she filed a Chapter 7 petition in the United States Bankruptcy Court for the Southern District of New York.

The Debtor's petition listed as her personal property – household goods and furnishings, books and pictures, clothing and jewelry totaling $3,600.00, all of which were claimed as exempt under section 5205 of the New York Civil Practice Law and Rules.  The meeting of creditors pursuant to 11 U.S.C. § 341(a) in the Debtor's case, was held on September 21, 2005 and the trustee filed his "no asset" report five days later on September 26, 2005 stating that "[t]he estate has no nonexempt property to distribute." On October 4, 2005, the Debtor amended Schedule F of her Chapter 7 petition to include Binder as a creditor holding an unsecured claim in the amount of $1,904.25.  Plaintiff did not object to the classification of its claim.  On February 3, 2006, the Debtor was granted a discharge of all her indebtedness, including Binder's claim.  Plaintiff did not object to the dischargeability of its claim or the Debtor's discharge.

Plaintiff filed the Complaint on December 31, 2005.  On April 19, 2006, the SSA filed a motion to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.  On April 26, 2006, Binder filed a motion for summary judgment. On May 23, 2006, the Debtor filed a cross-motion for summary judgment.  A hearing on these motions was held on June 21, 2006.

## B.  THE PARTIES' CONTENTIONS

### 1.  Plaintiff

Binder asserts four causes of action in the Complaint (i) the SSA violated Plaintiff's due process rights by "unilaterally vacating," without notice, Binder's claim for attorney's fees that was to be awarded by the SSA, pursuant to New York state law and federal common law, notwithstanding the issuance of a discharge to the Debtor; (ii)

Plaintiff has an enforceable charging lien[3] under N.Y. Judiciary Law § 475[4] and a property interest in the attorney's fees to be paid by the SSA despite the discharge order; (iii) Plaintiff has a charging lien on the fees that were to be awarded by the SSA pursuant to 42 U.S.C. § 406 and the Debtor's receipt of these fees is subject to the right of offset and is not affected by the discharge; and (iv) the SSA remains liable to Plaintiff for the payment of the awarded attorney's fees.  Plaintiff further asserts that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, because Plaintiff's action for declaratory relief "concerns or arises under the pending Chapter 7 case of the Debtor," and is a "core proceeding" in accordance with 28 U.S.C. §§ 157(b)(2)(A), (I), and (K).  (The Complaint, ¶¶ 5-6.)

### 2. The SSA

The SSA moves to dismiss Binder's claims on grounds that (i) the Debtor is liable for Plaintiff's fees and not the SSA, (ii) the SSA did not deny Plaintiff due process, (iii) sovereign immunity bars Plaintiff from enforcing an attorney charging lien against general social security funds, and (iv) section 407(a) of the Social Security Act[5] bars the enforcement of liens against the Debtor's future disability payments.

---

[3] Plaintiff seems to indicate in the Complaint, and at times throughout its pleadings, that it still *has* a charging lien on property of the estate.  This argument is perplexing given that, as discussed more fully later, there was no property of the estate upon which such a lien could attach at the time of the filing and such is not disputed by any party.  To the extent, Plaintiff's references to an existing lien of some kind are to a lien on the general funds of the SSA, the Court, as discussed below, does not have subject matter jurisdiction over that issue.

[4] Section 475 of the New York Judiciary Law provides, in relevant part, that

> [f]rom the commencement of an action, special or other proceeding . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict . . . in his client's favor, and the proceeds thereof in whatever hands they may come . . . .  The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475 (McKinney 2005).

[5] Section 407(a) of the Social Security Act provides

Further, the SSA states in footnote 4 of its motion that the Court may not have subject matter jurisdiction to consider any of Plaintiff's claims.  While the SSA did not move to dismiss based on a lack of "related to" jurisdiction, it stated that the Court "may dismiss all of [Binder's] claims *sua sponte* for lack of subject matter jurisdiction" if the proceedings are not found to be "related to" the Debtor's Chapter 7 bankruptcy.  (The SSA's Memo. of Law in Supp. of Mot. to Dismiss, at 7 n.4.)  However, the SSA asserts that it would consent to the Court's resolution of Binder's "related to" claims against the SSA if the Court finds jurisdiction is established.  Nevertheless, the SSA states that it does not waive its sovereign immunity as to the enforcement of any charging lien against its general funds.

### 3.  The Debtor

The Debtor asserts, in her cross-motion for summary judgment, that the Court has jurisdiction, pursuant to sections 1334 and 157 of title 28, to hear and determine the issues relating to the controversy between Plaintiff and herself which, she claims, are "separate but related" to the controversy between Plaintiff and the SSA.  She asserts that if Plaintiff prevails, the Court must determine, among other matters, whether Plaintiff, as of the commencement of the Debtor's Chapter 7 bankruptcy case, held a valid claim against the Debtor, a valid "charging lien" on property of the Debtor and whether such lien survived the discharge of the Debtor.

## II.  STANDARD OF REVIEW

---

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (2007).

Fed. R. Civ. P. 12(b)(1) is incorporated into bankruptcy procedure by Fed. R.

Bankr. P. 7012(b). When considering a 12(b)(1) motion to dismiss for lack of subject

matter jurisdiction, the court must view the complaint liberally and accept as true all

material facts alleged in the complaint. *See 19 Court Street Assocs, LLC v. Resolution*

*Trust Corp. (In re 19 Court Street Assocs, LLC)*, 190 B.R. 983, 995 (Bankr. S.D.N.Y.

1996); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 775 F. Supp. 101, 103

(S.D.N.Y. 1991). The court is also permitted to consider evidence extrinsic to the

pleadings, such as evidence presented by affidavits or otherwise. *Kamen v. American*

*Telephone & Telegraph*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen . . . subject matter

jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by

affidavit or otherwise."); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F.

Supp. 2d 527, 533 (S.D.N.Y. 2001) (same). The party seeking to invoke the court's

jurisdiction has the burden of establishing that subject matter jurisdiction exists over its

complaint. *See In re Joint E. & So. Dist. Asbestos Litig.*, 14 F.3d 726, 730 (2d Cir.

1993); *Celestine v. Mount Vernon Neighborhood Health Center*, 289 F. Supp. 2d 392,

399 (S.D.N.Y. 2003).

### III. DISCUSSION

Plaintiff asserts all four of its causes of action in the form of declaratory judgment

relief.[6] Such relief does not independently create federal jurisdiction, but rather "an

action for declaratory judgment may be brought in federal court ordinarily only if there

would exist a basis for federal jurisdiction in a coercive action between the two parties."

*Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 186 (2d Cir. 1977) (citing

---

[6] The Court notes that Plaintiff's causes of action against the SSA simply seek a determination of liability
and are not premised upon any "threatened injury" which could support a request for declaratory judgment
relief.

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)).  Thus, the Court must assess whether it has subject matter jurisdiction over Plaintiff's causes of action against the Debtor and the SSA.

For the reasons stated below, the Court finds that Plaintiff's third cause of action against the Debtor presents no "case or controversy" at issue as to the issue of "setoff" or "recoupment."  However, as to the issue of the existence of a lien at any time after the disposition of the Award, the Court grants a determination in favor of the Debtor that Plaintiff possessed no lien on or property right to estate property as a matter of law under the circumstances as acknowledged by Plaintiff.  Plaintiff's first, second, and fourth causes of action against the SSA do not constitute "core" or "related to" proceedings. The Court dismisses all of Plaintiff's causes of action against SSA for lack of subject matter jurisdiction.

### A.  PLAINTIFF'S THIRD CAUSE OF ACTION

Plaintiff's third cause of action essentially seeks two declaratory judgments.  One request directly concerns the SSA, asserting that Plaintiff's charging lien "and/or property right" was not extinguished, and the other is aimed at the Debtor, requesting that the SSA should be permitted to recoup any losses incurred from the Debtor.[7]  The first request confusingly latches upon the notion of a charging lien even thought the facts alleged by Plaintiff, including that there is no identifiable *res*, establish that such a lien could not exist as a matter of law.  The Court determines that no lien existed on the property of the estate on the petition date as a matter of law.  Accordingly, the Court denies Plaintiffs'

---

[7] *See* The Complaint, ¶ 39(d) (requesting a judgment declaring that "Plaintiff's attorneys lien [sic] and/or property right for the fees survives this bankruptcy case and the monies paid for the legal services improperly to the Debtor is subject to the right of offset notwithstanding the issuance of the discharge in bankruptcy to the Debtor").

request for declaratory relief and grants a determination in favor of the Debtor that no

lien existed on estate property as of the petition date.  The second request fails to meet the

standards of "ripeness" required by the "case or controversy" doctrine.

### 1.  Plaintiff's Alleged Charging Lien

Plaintiff seeks a "declaratory judgment that its attorneys' lien [sic] can not be

extinguished, thereby providing that [Plaintiff] is entitled to receive the amount of

attorneys fees still unpaid to [it] . . . ."  (The Complaint, ¶ 33.)  A literal reading of this

claim suggests that Plaintiff either presently possesses or possessed on the Debtor's

petition date a charging lien on the Award released to the Debtor.  The Court finds these

arguments to be absurd and inconsistent with any legal or factual basis presented by

Plaintiff.

Plaintiff has presented no legal theory as to how it *continues* to possess a charging

lien on or any other property right to estate property.  Further, it has not presented any

legal theory to support a contention that any lien could exist after the disposition of the

Award by the Debtor.  All parties agree that the disposition of the Award took place years

before the Debtor's petition and that no traceable funds existed as of the petition date.

Specifically, Plaintiff does not dispute that the lien would have to attach to the Award

under its legal theories and that the Award, as stated above, was completely dissipated by

the Debtor long before the filing of the petition.  Plaintiff never asserted a lien against

estate property or objected to its classification as an unsecured creditor.  Plaintiff did not

object to the Debtor's discharge or the dischargeability of the debt associated with the

fees.  Further, Plaintiff states that in its view the Debtor is excused from any liability

regarding payment of the fees.  (*See* The Complaint, ¶ 36.)

Even if a lien existed at one time, the Court finds that the *res* at issue had long since been dissipated as of the Debtor's petition date.  The Court finds that there is no legal or factual basis asserted by Plaintiff that would support the proposition that a lien, charging or otherwise, could exist on the *res* once it has been dissipated and is incapable of being traced to any other property.  *See, e.g., Haser v. Haser*, 707 N.Y.S.2d 47, 50 (1st Dep't 2000) ("[T]he expedited procedure of Judiciary Law § 475 is designed to attach only the specific proceeds of the judgment or settlement in the action where the attorney appeared . . . .  [T]o enforce her lien against the defendant's other assets, [the attorney] must bring a separate action against him."); *Butler, Fitzgerald & Potter v. Gelmin*, 651 N.Y.S.2d 525 (1st Dep't 1997) ("[T]he charging lien does not provide for an immediately enforceable judgment against all assets of the former client . . . [, but is rather] security against a single asset of the client . . . ."); *see also Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 754 N.Y.S.2d 220, 224 (1st Dep't 2002) (finding that unlike a charging lien, a plenary action in *quantum meruit* for the reasonable value of services rendered "can be exercised by the attorney against all of the former client's assets").  The Court knows of no legal theory in which a lien could exist absent a *res*, and Plaintiff asserts no lien on any property other than the past-due amount.  With no *res,* no lien, charging or otherwise, existed as of the petition date.  Therefore, the Court finds that if any lien once existed on the past-due amounts, such lien did not exist on estate property as of the petition date.

The Court has subject matter jurisdiction to adjudicate the validity of Plaintiff's lien with regard to estate property because this issue constitutes a "core" proceeding pursuant to 28 U.S.C. 157(b)(2)(K).  Accordingly, the Court grants Debtor's request for a

determination on the validity of Plaintiff's alleged charging lien, and holds that Plaintiff

neither has nor had a valid charging lien on estate property as of the Debtor's petition

date.

An alternative reading to the literal interpretation of Plaintiff's charging lien cause

of action above can be that Plaintiff once *had* a charging lien and that the SSA's release

of the attorney's fees rendered the SSA *liable* under both section 475 of the New York

Judiciary Law for not honoring a lien and 42 U.S.C. § 406 for failing to comply with its

statutory obligation to withhold the fees.  This reading would make for a more plausible

cause of action and resembles the non-debtor, third-party arguments made in Plaintiff's

first, second, and fourth causes of action.  However, such claims, as discussed more fully

below, constitute non-core proceedings that are not sufficiently "related to" the Debtor's

bankruptcy case and are therefore dismissible due to lack of subject matter jurisdiction.[8]

## 2.  Recoupment From The Debtor

Plaintiff alleges that "the monies paid for the legal services improperly to the

Debtor is [sic] subject to the right of offset notwithstanding the issuance of the discharge

in bankruptcy to the Debtor."  (The Complaint, ¶ 39(d).)  The Court finds that this cause

---

[8] Although the Second Circuit has recently issued a decision that Plaintiff believes to be applicable to this case, *Binder & Binder, PC v. Barnhart*, 481 F.3d 141 (2d Cir. 2007), the Court does not see that decision as influencing the Bankruptcy Court's jurisdictional analysis set forth herein.  The brief factual background of that case is as follows.  Binder there represented a claimant before the SSA and submitted a request to the SSA to approve its fee.  The claimant then filed for bankruptcy, listing Binder's fee as a disputed and unsecured claim.  *Id.* at 144.  The SSA subsequently sent payment to Binder and then quickly attempted to retrieve it, explaining that since the claimant had filed for bankruptcy, and had received a discharge, the SSA had paid Binder in error.  *Id.*  The Second Circuit expressly refused to consider the issue of a lien's existence, and thus did not answer whether the defense of sovereign immunity would bar a judgment predicated upon an attorney's charging lien.  *See id.* at 150 ("[W]e . . . examine only whether the SSA had the authority to take the action it did – the demand for return of the monies paid to Binder.").  The Second Circuit held that the SSA could not, on its own, interpret bankruptcy law to decide that Binder had to return money paid to it because it had represented a claimant who entered bankruptcy.  *See id.* at 152 ("We simply find no authority for the SSA to interpret and apply bankruptcy law or to enforce the orders of the Bankruptcy Court, and we hold that, in the absence of such authority, the SSA's unambiguous and limited duty was to certify for payment to Binder the firm's reasonable fee.").

of action, aimed against the Debtor, does not meet the constitutional requirement of "ripeness."

"The United States Constitution limits federal courts in their jurisdiction to actual 'cases' or 'controversies.'" *In re Adelphia*, 307 B.R. 432, 436 (Bankr. S.D.N.Y. 2004) (citing U.S. Const. art III, § 2, cl. 1). The limitations placed upon federal courts by the "case or controversy" doctrine embody the doctrines of standing, ripeness and mootness. *See Petition of Davis*, 191 B.R. 577, 582 (Bankr. S.D.N.Y. 1996) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *see also DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1858 (2006) ("[D]octrines of mootness, ripeness, and political question all originate in Article III' s 'case' or 'controversy' language, no less than standing does."). Because ripeness is a constitutional prerequisite to exercise jurisdiction, the Court "can raise the issue *sua sponte*." *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998) (internal citations omitted).

The ripeness doctrine requires that there be a "real, substantial controversy between parties" involving a "dispute definite and concrete." *In re Bean*, 252 F.3d 113, 117 (2d Cir. 2001) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The basic rationale underlying the doctrine of ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967)); *see also In re Bean*, 252 F.3d at 117-118 ("[Ripeness] requirements are intended to prevent adjudication of issues that may never arise."). Ripeness is thus "peculiarly a question of timing." *In re Drexel*, 995 F.2d at 1146.

"The [ripeness] doctrine turns on whether there are nebulous future events so contingent in nature that there is no certainty they will ever occur." *Id.* "In order to determine whether an issue is ripe for adjudication, a court must make a fact-specific evaluation of 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *United States v. Fell*, 360 F.3d 135, 139 (2d Cir. 2004) (quoting *Gardner*, 387 U.S. at 149 (1967)); *see also Thomas H. Lee Equity Fund V, L.P. v. Bennett*, No. 05 Civ. 9608(GEL), 2007 WL 950133, at *3 (S.D.N.Y. Mar. 28, 2007) ("To determine whether a case is ripe requires a two-pronged inquiry into [1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.") Ripeness is a "tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary." *See Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003).

The Court finds that this cause of action, aimed against the Debtor, does not present a "real, substantial controversy between parties" involving a "dispute definite and concrete." *In re Bean*, 252 F.3d at 117. The dispute is not fit for a judicial decision as it depends on "future events so contingent in nature that there is no certainty they will ever occur." *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998). Moreover, none of the parties would suffer any hardship from the Court's refusal to issue a declaratory judgment. As such, the controversy is too speculative to be ripe.

Although the SSA's liability to Binder may be ripe for adjudication in a forum where Binder could establish subject matter jurisdiction, the requested declaratory judgment that the SSA has a right to recoup against the Debtor should not be issued

14

because it is contingent upon the uncertain future events of (i) the SSA being liable to

Binder, and (ii) the SSA deciding to seek recoupment from the Debtor.  The first

contingency of liability is uncertain given the Court's inability to adjudicate this issue

due to lack of subject matter jurisdiction, as discussed in further detail below.  (*See infra*

at III.b for a discussion of the deficiencies of Plaintiff's claims against the SSA.).  The

Court will therefore focus on the second contingency of recoupment.

The possibility of the SSA seeking recoupment from the Debtor is sufficiently

removed from ripeness and would force the Court to rule abstractly.  A ruling would thus

violate the ripeness doctrine as the Court would be adjudicating an issue concerning the

Debtor's estate that may never arise.  The controversy at hand would only become ripe if

the SSA were found liable to Plaintiff for the amount of attorney's fees in dispute, and

the SSA then determined, and engaged in the procedure, to seek an offset from the

Debtor's future disability payments as recoupment for its loss.

The SSA has raised the possibility of recoupment in the March Letter[9] and during

a hearing before the Court.  Case law dictates that pursuant to 42 U.S.C. § 404(a)(1)(A)'s

language, the SSA is "mandated" to recoup overpayments made to a claimant, absent a

waiver for equitable considerations.  *See Pittman v. Sullivan*, 911 F.2d 42, 46 (8th Cir.

1990) (citing *Sullivan v. Everhart*, 494 U.S. 83, 90 (1990)); *see also* 42 U.S.C. §

404(a)(1) (2007) ("Whenever the Commissioner of Social Security finds that more or less

than the correct amount of payment has been made to any person under this [Social

Security] subchapter, *proper adjustment or recovery shall be made*, under regulations

prescribed by the Commissioner of Social Security . . . .") (emphasis added).  However,

---

[9] The March Letter states that if Binder experiences difficulty in collecting its fees from the Debtor, the SSA "will withhold benefits from Roslyn Finnie to the extent of [Plaintiff's] approved fee[s] or the amount that should have been withheld, whichever is smaller." (*See* The Complaint Ex. C.)

15

while all of these factors add to the likelihood of the SSA seeking recoupment from the

Debtor, they are not dispositive of the SSA "actually" taking such action.  The SSA must

still consider the procedure involved in seeking recoupment from the Debtor.  *See*

*generally* 20 C.F.R. § 404.502a (2007) (providing that once an initial determination is

made to recoup, the SSA must give immediate and proper notice to the claimant which,

in turn, must include several points of information); 20 C.F.R. § 404.506 (2007)

(providing the procedure for processing a request for waiver of the recoupment).  The

Court does not see how the SSA can make an affirmative determination now as to what it

may do in the (likely distant) future when it would decide, assuming it is found liable to

Plaintiff, whether to seek recoupment from the Debtor.  As has been observed,

"recoupment is an uncertain, drawn-out, and cumbersome method of collecting unpaid

attorney's fees."  *See Pittman*, 911 F.2d at 47.  More importantly, the SSA must

determine whether there is any equitable merit to seeking recoupment.  Under 42 U.S.C.

§ 404(b), the SSA is prohibited from recouping against a claimant who is without fault

and where the "adjustment or recovery would defeat the purpose of [Social Security

disability payments] or would be against equity and good conscience."  42 U.S.C. §

404(b) (2007); *accord* 20 C.F.R. § 404.508(a) (2007) (defining "defeat the purpose" as

depriving a person "of income required for ordinary and necessary living expenses");

*Pittman*, 911 F.2d at 47 ("[W]e have previously indicated that the phrase 'against equity

and good conscience' is not to be narrowly construed.").  The SSA acknowledged the

possibility that it "may ultimately be compelled to waive recoupment from [the Debtor]"

if circumstances show she is not at fault and recoupment would be against "equity and

good conscience."  (*See* the SSA's Memo. of Law in Opp. to Summ. J., at 13 n.5.)[10]  If

---

[10] The Court notes that the factors known to the Court the SSA would consider in determining any waiver

the SSA, after reviewing the equitable considerations, determined that recoupment is not
warranted, any ruling by the Court here would be premature and unnecessary.

Thus, because Plaintiff seeks a remedy that is, at best, contingent on future and
uncertain developments, its cause of action against the Debtor does not present a ripe
controversy and should be dismissed. Further, the question of *how* the SSA would
proceed against the Debtor is also contingent. Assuming Plaintiff files a subsequent
action against the SSA *and* prevails, the basis of such relief may inform the SSA
regarding any consideration of recoupment or offset in light of the Debtor's discharge.
As further proof of the cause of action's contingent nature, if Plaintiff prevails and the
SSA, after review of any waiver considerations, determines to seek recoupment, the SSA
could (i) initiate a declaratory judgment action, before it takes any action, as to the
appropriateness of such action in light of the Debtor's discharge, or (ii) commence the
recoupment process and run the risk that such commencement would be a violation of the
Debtor's discharge. Similarly, the Debtor upon notification of the commencement of any
recoupment could seek relief from the Court, or other court of competent jurisdiction, as
to the appropriateness of such action.

Based upon the aforementioned, the Court finds that withholding adjudication
will result in no hardship to any party. Plaintiff is at no risk of suffering future harm or
additional losses. Plaintiff has incurred a loss of $1,904.25 for unpaid legal bills dating
back to 1999. If the requested declaratory relief is not granted, Plaintiff will be in the

---

of recoupment seem to favor the Debtor – the Debtor is disabled and unable to work, the Debtor receives
food stamps and public assistance to help provide support and pay the rent for her and her minor son, and
there has been no allegation that the Debtor was engaged in any "wrongful conduct." However, it is
possible that at the time such consideration by the SSA were required to be made that the same factors may
change in a manner that could impact the SSA's determination. It would be purely speculative to try to
determine whether the SSA would actually seek recoupment, if it were found liable.

same position as when it filed its lawsuit and will suffer no further damages. *Simmonds*, 326 F.3d at 360 ("The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute [the requisite] hardship."). Additionally, neither the Debtor nor the SSA will change positions or suffer any additional losses should the Court withhold consideration.

For the reasons discussed above, the Court (i) denies Plaintiff's request for a declaratory judgment that its charging lien cannot be extinguished as Plaintiff cannot establish that a lien exists and finds that a determination that Plaintiff possesses no lien on estate property is warranted; and (ii) finds it lacks jurisdiction over Plaintiff's request for a declaratory judgment that SSA has the right to offset because it does not present a ripe case or controversy. The Court thus dismisses Plaintiff's third cause of action against the Debtor.[11]

## B. PLAINTIFF'S FIRST, SECOND, AND FOURTH CAUSES OF ACTION

---

[11] The Court, although it does not need to address the issue as it dismisses the third cause of action in its entirety for other reasons, would have dismissed the third cause of action's request for a declaratory judgment regarding the Debtor (that requested that the SSA be permitted to recoup any losses incurred from the Debtor) for a lack of subject matter jurisdiction under the Declaratory Judgment Act ("DJA"). The requirement under the DJA of an "actual controversy" is "conceptually linked to" the doctrine of ripeness. *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). In enacting the DJA, Congress has authorized declaratory judgments only in cases of "actual controversy," meaning for a court to have subject matter jurisdiction over a declaratory judgment action, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Adelphia*, 307 B.R. at 436-37. As discussed above under ripeness, the third cause of action, due to its hypothetical nature regarding the Debtor's estate, does not present a dispute "of sufficient immediacy and reality" to warrant the issuance of a declaratory judgment. Additionally, granting a declaratory judgment in Plaintiff's would not satisfy one of the main purposes of a declaratory judgment – avoiding accrual of damages. *See United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986); *see also In re Enron Corp.*, 297 B.R. 382, 386 (Bankr. S.D.N.Y. 2003) ("[N]umerous courts have indicated that the DJA is designed to enable parties to determine their rights prior to the accrual of damages."). As stated above, Plaintiff is at no risk of suffering additional losses. In this regard, Plaintiff's cause of action more closely resembles a claim for past damages rather than a claim for prospective relief. *See Bowen v. Massachusetts*, 487 U.S. 879, 916 (1988) (Scalia, J. dissenting) ("It does not take much lawyerly inventiveness to convert a claim for payment for a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, or for a declaration that the sum must be paid.").

Plaintiff's first, second, and fourth causes of action against the SSA seek declaratory judgments asserting a due process violation, a charging lien presumably on the SSA's general funds and that, notwithstanding the Debtor's discharge, the SSA remains liable for the payment of the attorney's fees. The Court must first determine whether it has subject matter jurisdiction to adjudicate these non-debtor, third-party causes of action. The Supreme Court has found that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (internal quotation marks omitted). To that effect, 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (2007). Additionally, pursuant to section 157(a) of title 28, district courts are permitted to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." Thus, a bankruptcy court's jurisdiction is limited to matters "arising under," "arising in," or "related to" a case filed under the Bankruptcy Code. *See Celotex*, 514 U.S. at 307 ("[T]he Bankruptcy Court's jurisdiction . . . must be based on the 'arising under,' 'arising in,' or 'related to' language of §§ 1334(b) and 157(a)."); *Geron v. Schulman (In re Manshul Constr. Corp.)*, 225 B.R. 41, 44 (Bankr. S.D.N.Y. 1998) (citing *Celotex*).

The Court finds that Plaintiff's causes of action against the SSA do not constitute core proceedings and are too remote to constitute non-core proceedings "related to" the Debtor's Chapter 7 case.

1.  Core Proceedings

"Arising under" proceedings consist of any cause of action created by title 11.

*See Liddle & Robinson, L.L.P. v. Daley (In re Daley)*, 224 B.R. 307, 311 (Bankr.

S.D.N.Y. 1998).  Stated differently, "bankruptcy courts will be able to hear any matter

under which a claim is made under a provision of title 11."  1 Collier on Bankruptcy ¶

3.01[4][c][i] (Alan N. Resnick et al. eds., 15th ed. 2006) (quoting H.R. Rep. No. 95-595

at 445 (1977)).  "Arising in" jurisdiction, on the other hand, "encompasses causes of

action that arise only in bankruptcy cases, that is, matters not based on any right

expressly created by Title 11, but that would have no existence outside of the

bankruptcy."  *In re Daley*, 224 B.R. at 311 (citations omitted); *Silverman v. General Ry.*

*Signal Co. ( In re Leco Enters., Inc.)*, 144 B.R. 244, 248 (S.D.N.Y. 1992) (quoting

*Spaulding & Co. v. Buchanan (In re Spaulding & Co.)*, 131 B.R. 84, 88 (N.D. Ill. 1990)).

"Arising in" and "arising under" proceedings constitute "core proceedings" upon

which a bankruptcy judge may enter a final order based on the application or construction

of bankruptcy law as expressed in title 11.  *See In re Manshul*, 225 B.R. at 45 ("'Arising

in' and 'arising under' proceedings encompass the matters that are at the core of the

jurisdiction of the bankruptcy courts, and depend upon the application or construction of

bankruptcy law as expressed in Title 11.") (internal quotation marks and citation

omitted); *In re Daley*, 224 B.R. at 311-12 ("'Core proceedings,' that is, those as to which

the bankruptcy judge may enter a final order, are proceedings arising under title 11 or

arising in a case under Title 11.") (internal quotation marks and citation omitted).

Simply stated, a core proceeding is "an action that has as its foundation the creation,

recognition, or adjudication of rights which would not exist independent of a bankruptcy

environment." *In re Manshul*, 225 B.R. at 45 (internal quotation marks and citation omitted).

Plaintiff's assertion that its action against the SSA is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), and (K) is without merit.  There is no case or controversy over estate property in Plaintiff's causes of action against the SSA to establish that the first, second and fourth causes of action are "core."  All parties agree that there was no "nonexempt property" in existence on the petition date and it appears that the causes of action against the SSA are as to its liability and a lien of some kind on its general funds.

28 U.S.C. § 157(b)(2)(A) provides that "matters concerning the administration of the estate" are core proceedings.  Here, the Debtor's bankruptcy proceeding is fully administered.  None of the parties dispute that the Debtor had no nonexempt property at the time she filed for Chapter 7.  The trustee's report states that the Debtor possessed no nonexempt property to distribute.  Moreover, the Debtor received her discharge.  Thus, Plaintiff's causes of action against the SSA cannot be considered core proceedings under 28 U.S.C. § 157(b)(2)(A).

28 U.S.C. § 157(b)(2)(I) provides that other examples of core proceedings are "determinations as to the dischargeability of particular debts."  Plaintiff's claim was discharged.  Plaintiff never objected to the dischargeability of its claim.  Further, Plaintiff asserts no cause of action in the instant matter that challenges the dischargeability of its claim.  Consequently, Plaintiff's causes of action against the SSA do not fall within this particular category of core proceedings.

28 U.S.C. § 157(b)(2)(K) provides that core proceedings also encompass "determinations of the validity, extent, or priority of liens." Plaintiff is seeking to enforce a lien against the SSA's general funds. Even if such a lien could exist, that action is between two non-debtor, third parties and does not implicate the administration of the estate. Thus, Plaintiff's first, second and fourth causes of action against the SSA do not constitute core proceedings under 28 U.S.C. § 157(b)(2)(K).

Accordingly, the Complaint does not assert any causes of action against the SSA that can be considered "core proceedings" under section 157 of title 28.

### 2. Non-Core Proceedings

A bankruptcy court may have subject matter jurisdiction over a non-core proceeding if the matter is "related to" a title 11 case.[12] *See In re Manshul*, 225 B.R. at 45 ("Even if a case does not 'arise in' or 'arise under' Title 11, a bankruptcy court may still have jurisdiction over the matter if the proceeding is 'related to' a Title 11 case."). In *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, the Second Circuit held that "[t]he test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankruptcy estate." 980 F.2d 110, 114 (2d Cir. 1992).[13]

---

[12] Although a bankruptcy court may have subject matter jurisdiction to hear non-core proceedings that are "related to" a bankruptcy case, it is only given authority, unless the parties otherwise consent, to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." *Barclays PLC v. Arthur Andersen LLP (In re Enron Corp.)*, 353 B.R. 51, 58 (Bankr. S.D.N.Y. 2006) (quoting 28 U.S.C. § 157(c)(1) (2007)).

[13] This test has been interpreted as requiring that the outcome of the proceeding *either* "have any possible conceivable effect" on the bankrupt estate *or* "any significant connection" with the bankrupt estate. *See, e.g.*, *In re Daley*, 224 B.R. at 314; *In re Ralph Lauren Womenswear, Inc.*, 204 B.R. 363, 374 (Bankr. S.D.N.Y. 1997); *cf. In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983). Regarding the above interpretations, the court in *In re Adelphia Commc'ns. Corp.* found that there is no difference between the two interpretations and that "the existence of a 'conceivable effect' on the bankruptcy estate now establishes 'related to' jurisdiction." 285 B.R. 127, 137 (Bankr. S.D.N.Y. 2002).

Whether a case has a "conceivable effect" on the bankruptcy estate depends on if the outcome could "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638 (S.D.N.Y. 1997) (quoting *Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32 (S.D.N.Y. 1994)); *cf. Celotex*, 514 U.S. at 308 n.6.

Courts have provided various examples of proceedings that may be "related to" a bankruptcy case. Two such instances include (i) where causes of action owned by the debtor become property of the estate pursuant to 11 U.S.C. § 541, and (ii) where suits between third parties have an effect on the bankruptcy estate. *Celotex*, 514 U.S. at 307 n.5. Prior to *Celotex*, the court in *Holland Indus., Inc. v. United States* listed three examples in which a civil proceeding involving non-debtors could be "related to" a bankruptcy case

> [i] a civil proceeding [to] . . . determine the secured or unsecured status of a creditor of the debtor . . . ,
> [ii] a civil proceeding between non-debtors that would increase or diminish a debtor's liabilities . . . , [and]
> [iii] a civil proceeding [in which the] . . . resolution would affect the amount of property available for distribution to the estate's creditors.

*Holland Indus., Inc. v. United States (In re Holland Indus., Inc.)*, 103 B.R. 461, 468 (Bankr. S.D.N.Y. 1989); *see In re Daley*, 224 B.R. at 315 (listing the three *Holland* situations).

While "related to" proceedings may seem broad, it is well established that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex*, 514 U.S. at 308 n.6; *In re Manshul*, 225 B.R. at 45; *In re Daley*, 224

23

B.R. at 314.  Further, the Second Circuit has held that "[a]s a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy."  *In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d Cir. 1979).   More importantly, "relatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely."  *In re Holland Indus., Inc.*, 103 B.R. at 468.

The instant matter closely resembles the above listed examples of proceedings in which "related to" jurisdiction is discussed; in that Binder and the SSA are both non-debtor third parties that are engaged in an adversary proceeding.  The main concern is whether the facts of this case establish a "conceivable effect" upon the bankruptcy estate – i.e., whether Binder's causes of action against the SSA alter, increase, or diminish the Debtor's "rights, liabilities, options, or freedom of action" in a manner that is not remote and whether they have any impact upon the administration of the estate.  Based on the circumstances of this case, the Court finds that Binder's first, second and fourth causes of action against the SSA are too remote to be considered "related to" the Debtor's Chapter 7 case.

Regarding the impact of the causes of action on the administration of the estate, the Court has already found that the estate has been fully administered.  It is undisputed that the Debtor had no nonexempt property at the time of her Chapter 7 petition.  The Court, therefore, need not be concerned with whether Binder's causes of action against the SSA will interfere with the completion of its administrative duties with respect to the estate.  Such duties have already been fully satisfied at this particular time.  It remains to

address whether Plaintiff's causes of action alter the Debtor's rights, liabilities, options, or freedom of action.

Binder's first, second and fourth causes of action have no direct impact on the Debtor or her bankruptcy case.  Plaintiff's first cause of action seeks a declaration that its due process rights were violated because its claim for attorney's fees was unilaterally vacated by *the SSA*.  (*See* The Complaint, ¶¶ 18-19.)  The second cause of action seeks a declaration that *the SSA* cannot affect Plaintiff's charging lien and/or property right.  (*See* The Complaint, ¶ 25.)  Plaintiff's fourth cause of action seeks a declaration that *the SSA* remains liable for the payment of the attorney's fees.  (*See* The Complaint, ¶ 39.)  Clearly, these causes of action are directed primarily at the SSA and not estate property.  Thus, these causes of action on their face do not constitute proceedings that are "related to" the Debtor's Chapter 7 case.

The only possible effect that these causes of action could have on the Debtor is if the SSA proceeds to recoup from the Debtor's future disability payments whatever losses it may incur from a separate action brought by Plaintiff.  While this would alter the Debtor's rights, liabilities, options or freedom of action, it is contingent upon Binder prevailing in its liability action against the SSA and the SSA determining that it will seek recoupment from the Debtor.  As shown above, the likelihood of the SSA seeking recoupment is not ripe.  The Court, therefore, follows the rationale of *In re Holland* and finds that although the possibility of recoupment may "conceivably" be "related to" the Debtor's estate, it is so "only remotely," and does not reach the threshold of relatedness required for subject matter jurisdiction.

Based upon the aforementioned, the Court dismisses Plaintiff's first, second and fourth causes of action against the SSA due to lack of subject matter jurisdiction.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff's third cause of action against the Debtor is denied regarding its request for a declaratory judgment that its charging lien cannot be extinguished, and dismissed, *sua sponte*, for lack of subject matter jurisdiction as to Plaintiff's request for a declaration that the SSA is permitted to recoup losses from the Debtor.  Debtor's request, regarding Plaintiff's third cause of action, for a determination that no lien existed on estate property as of the petition date is granted.  Plaintiff's first, second and fourth causes of action against the SSA are dismissed, *sua sponte*, for lack of subject matter jurisdiction as none of them "arise in" or "arise under" title 11 or are "related to" the bankruptcy proceeding.  The SSA's motion to dismiss these causes of action, based upon sovereign immunity and other grounds, is moot.

The SSA is to settle an order consistent with this opinion.

Dated: New York, New York
       May 29, 2007

                                   s/Arthur J. Gonzalez
                                   UNITED STATES BANKRUPTCY JUDGE